

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00091-CR

ERIC SOSA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1291733D

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Eric Sosa's guilt for the assault of his girlfriend, Maria Almendarez, was adjudicated after the trial court found Sosa violated the terms and conditions of his community supervision by assaulting an elderly neighbor. Sosa was convicted of assault of a household member and received an enhanced sentence of five years' imprisonment. On appeal from proceedings in Tarrant County,[1] Sosa argues that the State failed to prove he was the same individual that was sentenced to community supervision.[2] We affirm the trial court's judgment.

"We review a trial court's decision revoking probation for abuse of discretion." *Little v. State*, 376 S.W.3d 217, 219 (Tex. App.—Fort Worth 2012, pet. ref'd) (citing *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)). "The State must prove at a revocation hearing that the defendant is the same individual as is reflected in the judgment and order of probation, and that the individual violated a term of probation as alleged in the motion to revoke." *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993); *see Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). "The burden of proof at a probation revocation hearing is by a preponderance of the evidence." *Cobb*, 851 S.W.2d at 874; *see Little*, 376 S.W.3d at 219. However, the trial court is the sole trier of fact, and we review the evidence in the light most favorable to the trial court's ruling. *Cherry*, 215 S.W.3d at 919.

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]In companion cause number 06-13-00090-CR, Sosa also appeals from a judgment adjudicating guilt for the assault of his brother, Israel Sosa, and the resulting sentence of five years' imprisonment.

The underlying indictment in this case alleged that Sosa intentionally or knowingly caused bodily injury to Almendarez by hitting her with his hand. Sosa pled guilty to the indictment and true to the State's enhancement allegations pursuant to a plea agreement.[3] The trial court placed Sosa on deferred adjudication community supervision for a period of five years and required compliance with the terms and conditions of his community supervision.

The State subsequently filed a petition to proceed with adjudication alleging, among other things, that Sosa caused bodily injury by kicking his neighbor, Felipe Fernandez, an elderly person. At the hearing on the motion, Felipe testified that Sosa "all of a sudden . . . came at [him]," kicked him twice in the inside thigh, "grabbed" a rock and was "trying to bash [his] head with it." When Sosa was finished assaulting Fernandez, he threw a rock "towards the windows" of his car, causing "about 470" dollars of damage.

The State rested after introducing the testimony of Fernandez and Detective Michael Brown, who investigated the case. Sosa's counsel then moved for a directed verdict, which was denied by a judge who did not preside over the plea proceedings. Counsel stated,

> Well -- and actually, Judge -- I'm sorry. Procedurally the State has rested, and at this point -- I'm not sure of the correct term; however, I will call it when [sic] I think it is, I'd make a ruling for a directed verdict. The State has not proven that Eric Sosa is on probation. That he received a copy of his conditions of probation and that he violated said conditions.
>     So at this point we don't believe the State has put on enough evidence to prove either petition to proceed to adjudication that has been filed in this case and that we are currently hearing.

---

[3]Written plea admonishments reflecting the plea agreement and a judicial confession were signed by Sosa.

3

In his closing argument, Sosa's counsel again argued that the State had not proven that "this Defendant appeared in court with counsel and pled guilty to the offenses" and had not "asked the court to take judicial notice[4] of what's in the file."[5]

The indictment for the underlying offense and affidavit of indigency that was originally filed in this case listed Sosa's address as 537 W Hammond, Fort Worth, TX 76115. The notice informing Sosa's counsel that she had been appointed to represent him during adjudication proceedings listed the same address, and the warrant for Sosa's arrest was also executed at that address. Thus, Sosa was apprehended and adjudicated with reference to the same address that was listed in the State's indictment for his underlying assault. Also, the indictment contained Sosa's race and age, which the trial court was in a position to visually confirm.

Evidence from witnesses at the adjudication hearing also established that the person sitting in the defendant's chair was the same person that had been placed on community supervision. Fernandez testified that he lived at "540 West Hammond Street in Fort Worth,

___

[4]"[I]n sufficiency of the evidence challenges in probation revocation cases, as long as the judgment and order of probation appear in the record on appeal the State is not required to introduce the documents into evidence." *Cobb*, 851 S.W.2d at 874 (footnote omitted).

[5]The State responded by arguing, "The mother's testimony -- I asked her if he was on probation for assaulting Israel [Sosa] and for assaulting Maria, and the mother said that he was." In fact, the transcript of Mary Lou Sosa's examination fails to support the State's assertion to the court:

> Q.      [State's Counsel] And do you know him to be on probation for assaulting Eric -- I'm sorry, for assaulting Israel and also for assaulting Maria?
>
> A.      Well, isn't that what we are talking about, we are talking about that guy [referring to Fernandez]?
>
> Q.      Well, I'm asking about Maria and Israel. Is he on probation for assaulting them?
>
> A.      I don't really know anything about that, because I'm at home and I'm sick. They -- they, you know, take care of their own business because they are men.

Texas," next door to the Sosa family. Sosa's mother, Mary Lou Sosa, who was listed as a dependent on the original affidavit of indecency, testified that she moved to Hammond Street and had lived there since 1993.

Almendarez testified that she had known Sosa for three years and that she witnessed an altercation between Sosa and Fernandez while she was at Mary's house on Hammond Street. She testified that she had made a police report alleging Sosa had assaulted her but that she had later denied the incident. When asked whether Sosa was currently on community supervision for assaulting her, she testified, "I don't know what he's [on] probation for. I just -- I know he's on probation."

The witnesses at the adjudication hearing pointed to Sosa and identified him as Eric Sosa. The Sosa that was placed on community supervision had pled guilty to assaulting Almendarez in this case and Israel in cause number 06-13-00090-CR and lived at the Hammond Street address. At the adjudication hearing, it was established that the Sosa sitting at the defendant's table still had a relationship with Almendarez, had a brother named Israel, lived at the same address, and matched the description of the person described in the underlying indictment. We find that the trial court did not abuse its discretion in deciding that the State met its burden to prove, by a preponderance of the evidence, that the Sosa at the adjudication hearing was the same person who had been placed on community supervision.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 11, 2013
Date Decided:      September 12, 2013

Do Not Publish